**Anne ARCHIBALD, Plaintiff,**

v.

**Robert ARCHIBALD, Defendant.**

**Civ. No. 93–25–P–C.**

United States District Court,
D. Maine.

July 1, 1993.

Caroline Gardiner, Portland, ME, for Anne Archibald (plaintiff).

John Linnell, Linnell, Choate & Webber, Auburn, ME, for Robert Archibald (defendant).

## MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

This action was instituted by Plaintiff Anne Archibald against her father, Defendant Robert Archibald, alleging that she was physically and sexually abused by him over a seven year period during her childhood.[1] Specifically, the Complaint alleges assault and battery (Count I); incestuous abuse (Count II); intentional infliction of emotional distress (Count III); negligent infliction of emotional distress (Count IV); breach of parental duty (Count V); false imprisonment (Count VI); and invasion of privacy (Count VII). Currently pending before the Court is Defendant's Motion to Dismiss claiming that the Court lacks jurisdiction over Defendant, Fed.R.Civ.P. 12(b)(2), and that Plaintiff's Complaint fails to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

█ To resolve Defendant's Motion to Dismiss, the Court must accept as true all factual allegations in the Complaint, construe them in favor of Plaintiff, and decide whether, as a matter of law, Plaintiff could prove any set of facts which would entitle her to relief. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir.1987); *Gott v. Simpson,* 745 F.Supp. 765, 768 (D.Me.1990).

The allegations of Plaintiff's Complaint and Affidavit are as follows: Plaintiff was born on October 24, 1960, and was continuously physically and sexually abused by Defendant from 1965 through 1972. During that time, Plaintiff lived with Defendant in one of two locations in Ohio. In addition to other alleged injuries, Defendant's sexual abuse caused Plaintiff to develop:

---

1. Plaintiff's Complaint was originally filed in state court. On January 25, 1993, Defendant removed the case to federal court (Docket No. 1).

16. ... severe psychological mechanisms, including, but not limited to denial, repression, accommodation, and dissociation by which she separated herself from the acts being done to her body. As a result, the plaintiff subconsciously repressed and denied the existence and most significantly, the impact of the sexual assaults from at or about the time of each event until January 1991, when psychological therapy enabled her to begin to remember the incidents.

17. At all times mentioned in this complaint, and until Plaintiff discovered through psychotherapy the causal connection between the Defendant's acts and the Plaintiff's injuries, the Plaintiff was disabled and under such a condition of mental derangement to actually bar her from comprehending the rights which she was otherwise bound to know. As a result of such disability, the Plaintiff was rendered incompetent and incapable of bringing suit at the time the acts of sexual abuse described above occurred.

18. The Plaintiff used all due diligence, given the nature, extent, and severity of her psychological injuries and the circumstances of their infliction, to discover the fact that she had been sexually abused and injured by such sexual abuse, and once the Plaintiff did discover the fact of the above described abuse and her injuries, she acted with due diligence to bring this action.

Complaint (Docket No. 1A) ¶¶ 16–18.

Plaintiff moved to Maine approximately two years ago. Since then Defendant has maintained regular contact with Plaintiff at her home in Maine, writing to her approximately twice a month, telephoning her every Sunday afternoon, sending her occasional packages, and visiting her in Maine. Archibald Affidavit (Docket No. 6) ¶¶ 4, 6. In addition, Defendant frequently travels to Maine, taking his annual or bi-annual vacations in this state. Archibald Affidavit (Docket No. 6) ¶ 5.

Plaintiff makes no allegation of the commission of new acts of sexual abuse by Defendant since she has moved to Maine. It appears that Defendant's contacts with Plaintiff in Maine have been those that may fairly be characterized as normal parent-adult child visits and relations. Plaintiff argues, however, that the *intended effect* of these contacts by Defendant has been to perpetuate her repression of memory of the acts of sexual abuse that occurred in Ohio. It is not suggested that Defendant has intentionally pursued the relationship with Plaintiff in order to create the opportunity for commission of *new acts* of sexual abuse. Defendant is, and at all pertinent times has been, a resident of Ohio.

## I. PERSONAL JURISDICTION

■■■ Defendant contends that the Court should dismiss Plaintiff's claims for lack of personal jurisdiction over him. The Court notes at the outset that Plaintiff bears the burden of proving that *in personam* jurisdiction exists in the court. *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 674–75 (1st Cir.1992) (applying Maine law); *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 9–10 (1st Cir.1986); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir.1980). Because the Court decides the motion on the basis of the pleadings and an affidavit, Plaintiff need only make a *prima facie* showing of jurisdiction. *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 (1st Cir.1986) (citations omitted). Plaintiff's showing of jurisdiction must be based upon allegations of specific jurisdictional facts incorporated in the record and those facts should be construed in favor of the Plaintiff. *Chlebda v. H.E. Fortna and Brothers, Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979).

■■■ The exercise of *in personam* jurisdiction over this nonresident Defendant requires a two-part inquiry: 1) whether the assertion of jurisdiction is authorized by state statute, and 2) whether the assertion of jurisdiction under state law is consistent with the due process requirements mandated by the United States Constitution. *Hahn v. Vermont Law School*, 698 F.2d 48, 49–50 (1st Cir.1983); 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069, at 347 (1987). In this case, these twin inquiries collapse into one, because Maine's long-arm

statute, 14 M.R.S.A. § 704–A (1980)[2], extends personal jurisdiction to the limit allowed under the Due Process Clause of the Fourteenth Amendment. *See Frazier v. BankAmerica International,* 593 A.2d 661, 662 (Me.1991); *Architectural Woodcraft Co. v. Read,* 464 A.2d 210, 212 (Me.1983); *Tyson v. Whitaker & Son, Inc.,* 407 A.2d 1, 3 (Me. 1979). Accordingly, the Court's analysis will focus on whether the assertion of jurisdiction in this case violates due process.

### A. Due Process

Generally, due process requires that the defendant have "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The Court may have one of two types of personal jurisdiction over a nonresident: general or specific. The minimum contacts standard is different depending on whether one is discussing specific or general jurisdiction.

### 1. General Jurisdiction

A court which has general jurisdiction over a nonresident defendant may hear any suit against that defendant. The cause of action need not arise from the defendant's forum-related activities. General jurisdiction is established over a nonresident when a defendant's activities within the state are "substantial" or "continuous and systematic." *International Shoe,* 326 U.S. at 317, 66 S.Ct. at 159. It is alleged that over the past two years, Defendant has maintained regular contact with Plaintiff at her home in Maine, writing to her approximately twice a month, telephoning her every Sunday afternoon, sending her occasional packages, and visiting her in Maine. Archibald Affidavit (Docket No. 6) ¶¶ 4, 6. It is also alleged that Defendant frequently travels to Maine, taking his annual or bi-annual vacations in this state. Archibald Affidavit (Docket No. 6) ¶ 5. Given the nature of telephonic contact and the brief duration of vacations generally, the Court concludes that these contacts do not reach the level of substantiality and regularity necessary to establish general personal jurisdiction for claims based on Defendant's alleged tortious conduct in Ohio. Applying the *International Shoe* test, Plaintiff has failed to establish general jurisdiction over Defendant because Defendant's contacts with Maine are not "substantial" or "continuous and systematic."[3]

### 2. Specific Jurisdiction

The inquiry then becomes whether the facts support the exercise of specific jurisdic-

---

**2.** Maine's long-arm statute provides in pertinent part:

  **1. Declaration of Purpose.** It is declared, as a matter of legislative determination, that the public interest demands that the State provide its citizens with an effective means of redress against nonresident persons who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this State and persons of other states.
  This section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

  **2. Causes of action.** Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of the State as to any cause of action arising from the doing of any of such acts:

  .  .  .  .  .

    B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State;

    . . . .

    I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction of the courts of this State consistent with the Constitution of the United States.

**3.** General personal jurisdiction case law traditionally involves corporate defendants whose contacts with the state are business-related. The Court has been unable to find any case where an individual defendant is subject to the court's general personal jurisdiction based on the type of forum contacts alleged in this case. *See generally Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

tion over Defendant. Whether specific jurisdiction exists turns on an evaluation of "the relationship between the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1983) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Electrical Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088–89 (1st Cir.1992) (citing (*Helicopteros Nacionales*, 466 U.S. at 414 & n. 8, 104 S.Ct. at 1872 & n. 8)). The Court of Appeals for the First Circuit has developed a tripartite test for the ascertainment of specific jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.[4]

**4.** The Gestalt factors include: 1) the defendant's burden of appearing; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining a convenient and effective relief; 4) the judicial system's interest in obtaining the most effective resolution of the controversy; and 5) the common interests of all sovereigns in promoting substantive social policies. *See Donatelli v. National Hockey League*, 893 F.2d 459, 462, 465 (1st Cir.1990).

**5.** In framing her personal jurisdiction argument, Plaintiff overlooked the fact that she alleged that Defendant engaged in tortious conduct in Maine. Affidavit of Anne Archibald (Docket No. 6) ¶¶ 8, 9. The Court, however, understands Plaintiff's affidavit to allege that Defendant has acted tortiously by visiting Plaintiff in Maine and contacting Plaintiff in Maine regularly by telephone and mail. Plaintiff's affidavit states that Defendant's contacts with her in Maine "were part of the harm caused to [Plaintiff] by [Defendant] in that the contacts were part of [Defendant's] pattern of interacting with [Plaintiff] in such a manner as to deliberately perpetuate [Plaintiff's] repression of the memories of [Defendant's] incest of [Plain-

*Id. See also Rivera v. Bank One*, 145 F.R.D. 614, 622 (D.P.R.1993).

Although it appears that at least part of Plaintiff's emotional distress claims arise out of Defendant's forum-based activities[5], what the Court of Appeals for the First Circuit would call the "underlying litigation" derives from Defendant's alleged tortious conduct in Ohio. The relevant inquiry is whether the connections between Defendant, the forum, and the litigation are sufficiently direct and related so as to justify the exercise of personal jurisdiction. In this case there is little, if any, causal connection between the State of Maine and Defendant's alleged sexual abuse of Plaintiff in Ohio. The unmistakable heart of this case lies in the events alleged to have occurred in Ohio. Thus, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction will be granted.[6]

Accordingly, it is ORDERED that Defendant's Motion to Dismiss be, and it is hereby, GRANTED, the Complaint herein to be DISMISSED without prejudice.

SO ORDERED.

tiff]." Affidavit of Anne Archibald (Docket No. 6) ¶ 8. Thus, although Plaintiff has focused on where the effects of Defendant's conduct occurred, she has also alleged that parts of her claims for intentional and negligent infliction of emotional distress (Counts III and IV) arise from Defendant's Maine-based activities.

It is impossible to apportion the emotional distress suffered pre- and post–1972 events, including the emotional distress Plaintiff allegedly suffered as a result of Defendant's contacts with her in Maine. The Court notes that Plaintiff's allegations state two distinct claims for emotional distress: 1) the emotional distress resulting from the alleged abuse in Ohio; and 2) the emotional distress resulting from Defendant's conduct in Maine. Nevertheless, looking at this case as a whole, the *underlying litigation* stems from Defendant's Ohio-based conduct. Thus, both types of emotional distress claims must be dismissed for lack of personal jurisdiction.

**6.** Because the Court grants Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, it is unnecessary for the Court to reach Defendant's Motion to Dismiss for Failure to State a Claim.