Peter Dalkeith SCOTT, Plaintiff,

v.

Robert Trent JONES II,
et al., Defendants.

No. CIV. 97–124–P–C.

United States District Court,
D. Maine.

Oct. 29, 1997.

Richard L. O'Meara, Barbara T. Schneider, Murray, Plumb & Murray, Portland, ME, for Plaintiff.

John B. Lucy, Harrison L. Richardson, Richardson, Whitman, Large & Badger, Portland, ME, for Defendant Jones.

Ernest J. Babcock, Karen Frink Wolf, Friedman & Babcock, Portland, ME, for Defendant United Publications Inc.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

GENE CARTER, District Judge.

Plaintiff Peter Dalkeith Scott brings this diversity action pursuant to 28 U.S.C. § 1332(a)(2) against Defendants Robert Trent Jones II ("RTJ II") and United Publications, Inc. ("United") for allegedly defamatory statements made by a representative of RTJ II and published by United in its newspaper entitled *Golf Course News Asia–Pacific.* The matter is presently before the Court for consideration of Defendant RTJ II's Motion to Dismiss Plaintiff's claims against it

pursuant to Fed.R.Civ.P. 12(b) (for lack of personal jurisdiction, insufficient service of process, and improper venue) and the doctrine of forum non conveniens.[1] (Docket No. 11). For the reasons stated below, the Court will deny Defendant's motion.

## I. BACKGROUND

The alleged facts derived from the record are as follows. Plaintiff is an Australian citizen with a permanent residence in Singapore. Complaint ¶ 1 (Docket No. 1). He is a designer and architect of golf courses. *Id.* ¶ 7. RTJ II is a California corporation with its principal place of business in Palo Alto, California and an affiliate office in Singapore. *Id.* ¶ 3; Reply at 6 (Docket No. 19). United is a Maine corporation with its principal place of business in Yarmouth, Maine. Complaint ¶ 2.

RTJ II also provides architectural and design services for golf courses. *Id.* ¶ 8. RTJ II has designed one golf course in Maine and appears to be in the planning stages of another.[2] It does not have an office in Maine, nor does it retain any employees here on a regular basis. Motion to Dismiss at 3. United publishes a variety of newspapers and magazines targeting different audiences, including two quarterly newspapers aimed at the golf course industry: *Golf Course News* ("GCN") and *Golf Course News Asia–Pacific* ("GCN A–P").[3] Phillips Dep. at 9.

*GCN A–P* is researched, written, and laid out in Maine by a three-member staff. *Id.* at 10. Each issue is sent to Hong Kong for printing and distribution.[4] *Id.* at 16. Before each issue, the editorial staff at *GCN A–P* routinely contacts various architects and designers, including RTJ II, for updates on their current projects. *Id.* at 23. Each *GCN A–P* writer generally telephones RTJ II approximately three or four times a year.

---

1. The Court notes that RTJ II does not actually argue that venue is improper; rather, RTJ II seeks transfer of this action pursuant to 28 U.S.C. § 1404(a). Motion to Dismiss at 13.

2. RTJ II completed construction of a golf course at Sugarloaf/USA. Schroeder Aff. ¶ 4. The record indicates that RTJ II is currently in discussion with American Skiing Company regarding a course at Sunday River. Plaintiff's Dep. Ex. 57.

3. *GCN* targets a domestic audience, whereas GCN A–P has an international readership. Subsequent to the events in question, United changed the name of *Golf Course News Asia–Pacific* to *Golf Course News International.*

4. United contracts with a Hong Kong company to provide these services. Phillips Dep. at 16.

Blais Dep. at 13. In addition, RTJ II sends *GCN A–P* photos, press releases, and other information for publication in the newspaper. Phillips Dep. at 28, 31–32; Blais Dep. at 11. RTJ II also advertises in *GCN A–P*. *See* Plaintiff's Dep. Exs. 10A, 12A, 14A, 17A, 20A. *GCN A–P* receives RTJ II's quarterly newsletter. Phillips Dep. at 93. In 1994, *GCN A–P* invited Robert Trent Jones, Jr., RTJ II's sole Director and Chief Executive Officer, to serve on its editorial advisory boards.[5] Phillips Dep. at 40–42. In that same year, Robert Trent Jones, Jr. acted as a keynote speaker at GCN's trade show in Orlando, Florida. Phillips Dep. at 44; Plaintiff's Dep. Ex. 47.

In May of 1996, *GCN A–P* ran an article entitled "Membership Drive Prompts Jones II's Renovation of Pulai Springs Resort," which allegedly contained statements made by Stephen Schroeder, a vice president at RTJ II, during a telephone conversation with *GCN A–P* writer Peter Blais.[6] Plaintiff's Objection to Defendant's Motion to Dismiss with Incorporated

Memorandum of Law at 2 (Docket No. 15) ("Pl.'s Objection"); Plaintiff's Dep. Ex. 1. Plaintiff alleges that the statements contained in the article were untrue and damaging to his reputation, thus forming the basis for his defamation action against both RTJ II and United.

## II. PERSONAL JURISDICTION

In defending a Motion to Dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists. *See Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir.1992). When the Court decides the motion on the basis of written submissions, including pleadings, affidavits, and exhibits, Plaintiff must make a prima facie showing of personal jurisdiction by

"proffer[ing] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Id.; see also Sawtelle v. Farrell*, 70 F.3d 1381, 1386 n. 1 (1st Cir.1995). The record must contain specific allegations of jurisdictional facts, which the Court will construe in Plaintiff's favor. *See Archibald v. Archibald*, 826 F.Supp. 26, 28 (D.Me.1993). Judicial analysis of personal jurisdiction is a "fact-sensitive inquiry." *Sawtelle*, 70 F.3d at 1388.

The Court's exercise of personal jurisdiction over a nonresident defendant is controlled by a two-part investigation. First, the Court must assess whether the forum state's long-arm statute authorizes the exercise of jurisdiction. Second, the Court must determine whether the exercise of jurisdiction under the state statute complies with the constraints of due process required by the United States Constitution. *See Archibald*, 826 F.Supp. at 28 (citing *Hahn v. Vermont Law School*, 698 F.2d 48, 49–50 (1st Cir. 1983)) Because the jurisdictional reach of Maine's long-arm statute, 14 M.R.S.A. 704–A, is "coextensive" with the Fourteenth Amendment's Due Process Clause, *Murphy v. Keenan*, 667 A.2d 591, 593 (Me.1995), the Court will focus its analysis of personal jurisdiction in this case on the requirements of federal due process. *See Sawtelle*, 70 F.3d at 1388.

Due process generally mandates that the forum's exercise of personal jurisdiction over a nonresident defendant be predicated upon "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The applicable

---

5. This position appears to be largely ceremonial, although it seems clear that it is mutually beneficial for both *GCN A–P* and RTJ II. It provides RTJ II with a position on the newspaper's masthead, and it adds to *GCN A–P's* prestige. Phillips Dep. at 41.

6. The May 1996 *GCN A–P* article reads in relevant part:

> Robert Trent Jones II is overseeing a complete renovation of the existing Pulai Springs

Resort Golf Club and will design a second, 18–hole layout there as well.

Reconstruction of the original Peter Dalkeith Scott-designed layout, which opened in 1986, has begun and should be completed by mid–1997, according to Jones' office. No construction date has been set for the new course.

A new membership drive is being undertaken in conjunction with the redesign. The Chua Chi Minh family owns Pulai Springs.

minimum contacts standard depends on whether the forum is exercising general or specific jurisdiction. *See Archibald,* 826 F.Supp. at 29.

## A. General Personal Jurisdiction

 The Court exercises general jurisdiction when it asserts personal jurisdiction over a defendant in a suit unconnected to the defendant's forum-related activities. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984) (citations omitted); *Archibald,* 826 F.Supp. at 29. "General jurisdiction is established over a nonresident when a defendant's activities within the state are 'substantial' or 'continuous and systematic.'" *Archibald,* 826 F.Supp. at 29 (citation omitted); *see also Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 88 (1st Cir.1990).

 In applying the requirements of substantiality and regularity to RTJ II, the Court concludes that RTJ II's contacts with Maine are insufficient to support an exercise of general jurisdiction. RTJ II has two sources of contacts with Maine: (1) its design and architectural work for two clients located in Maine, and (2) its association with *GCN A–P.* Neither singly, nor taken collectively, are these contacts sufficient to justify the exercise of general jurisdiction over RTJ II.

RTJ II's work at Sugarloaf and Sunday River does not consist of "continuous and systematic" activity. *See Glater v. Eli Lilly & Co.,* 744 F.2d 213, 215, 217 (1st Cir.1984) (holding that advertising and employing eight sales representatives within the forum state did not constitute systemic and continuous activity to support general jurisdiction); *Saco River Tel. & Tel. Co. v. Shooshan & Jackson, Inc.,* 826 F.Supp. 580, 582 (D.Me. 1993) ("[R]epresentation of seven different clients on discrete short term projects over a decade does not amount to continuous or systematic business activity.... "). Likewise, RTJ II's association with *GCN A–P* is not substantial enough to provide a basis for the exercise of general jurisdiction. *See Archibald,* 826 F.Supp. at 29 (holding that weekly phone calls to and frequent vacations in the forum state "do not reach the level of substantiality and regularity necessary to establish general personal jurisdiction.... "). Thus, the Court concludes that RTJ II's contacts with Maine are insufficient to support an exercise of general jurisdiction.

## B. Specific Personal Jurisdiction

 In the absence of general jurisdiction, Plaintiff must allege jurisdictional facts sufficient to support an exercise of specific jurisdiction over RTJ II "Specific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1088–89 (1st Cir.1992) (citing *Helicopteros,* 466 U.S. at 414 & n. 8, 104 S.Ct. at 1872 & n. 8). The existence of specific jurisdiction "turns on an evaluation of 'the relationship between the defendant, the forum, and the litigation.'" *Archibald,* 826 F.Supp. at 30 (quoting *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872). The Court examines this relationship to determine if it "forms a fair and reasonable foundation for the exercise of jurisdiction over the defendant." *Howell Labs., Inc. v. Clear Channel Communications, Inc.,* 751 F.Supp. 258, 261 (D.Me.1990). The First Circuit has developed the following tripartite test to evaluate the exercise of specific jurisdiction:

> First, the claim underlying the litigation must directly *arise out of, or relate to,* the defendant's forum-state activities. Second, the defendant's in-state activities must represent a *purposeful availment* of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be *reasonable.*

*Pleasant Street,* 960 F.2d at 1089 (emphasis added). These three factors—relatedness, purposefulness, and reasonableness—must be satisfied for a court to exercise specific jurisdiction over a defendant. The Court now turns to an analysis of each factor in light of the jurisdictional facts alleged in this case.

**44**

First, Plaintiff's claim must arise out of or relate to RTJ, II's Maine contacts. The Court of Appeals for the First Circuit has interpreted this requirement to be one of proximate cause, albeit to be applied with a flexible approach. *See Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1333, 137 L.Ed.2d 493 (1997). "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must arise directly out of the specific contacts between the defendant and the forum state." *Sawtelle,* 70 F.3d at 1389.

One of RTJ II's contacts with Maine is to routinely provide business-related information, whether solicited by telephone or not, to a newspaper located in Maine and owned by a Maine corporation. "The transmission of information into [the forum state] by way of telephone or mail is unquestionably a contact for purposes of [personal jurisdiction] analysis." *Sawtelle,* 70 F.3d at 1389–90. The communications that RTJ II sent into Maine are not ancillary to Plaintiff's claim; rather, they "form an 'important or [at least] material, element of proof' in the plaintiff's case."[7] *Pleasant Street,* 960 F.2d at 1089 (quoting *Marino v. Hyatt Corp.,* 793 F.2d 427, 430 (1st Cir.1986)). In *Ticketmaster–New York, Inc. v. Alioto,* the court found that the plaintiff succeeded in demonstrating relatedness in a case in which the defendant had answered an unsolicited telephone call and served as a journalist's source for a newspaper article, providing a negative quote about the plaintiff. 26 F.3d 201, 212 (1st Cir.1994) In this case, Plaintiff makes an even stronger showing of relatedness with

allegations that RTJ II's defamatory statements were adopted verbatim by the article's writer, who regarded Schroeder as a reliable source.[8] Blais Dep. at 54. The Court is satisfied that Plaintiff's claim against RTJ II arises out of its allegedly direct contributions to an article that was researched and written in Maine by a Maine-based publication, thereby meeting the requirement of relatedness.

The second requirement for specific jurisdiction is purposefulness. The Court must determine if "[the] defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" *Sawtelle,* 70 F.3d at 1391 (quoting *Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980)). "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). In assessing the purposefulness of RTJ II's contacts in Maine, the Court must focus on two elements: voluntariness and foreseeability. *See Nowak,* 94 F.3d at 716.

The element of voluntariness ensures that the defendant's contacts with the forum state are not based on "the unilateral actions of another party or a third person." *Id.* The telephone conversation in question was not an isolated, random, unsolicited event but, rather, part of a routine exchange of mutually beneficial information between RTJ II and United. The element of foreseeability guarantees that "the defendant's contacts with the forum state [are] such that he should

---

7. Plaintiff's claim arises directly from RTJ II's contacts with Maine: its origin is a telephone conversation between a representative of RTJ II and a *GCN A–P* writer and the resulting article. Indeed, Plaintiff alleges that the words of RTJ II's representative were "reprinted *verbatim* in the Article." Pl.'s Objection at 9.

8. The *Ticketmaster* court noted that the plaintiff's relatedness showing was weakened by "the attenuated causal link between the allegedly defamatory utterance and the harm allegedly suffered...." *Ticketmaster–New York,* 26 F.3d 201, 212 (1st Cir.1994). According to the court, "the

link between the defendant's conduct and the cause of action is attenuated by the intervening activities of third parties, *e.g.,* the reporter, the editor, the media outlet, and that those intermediaries shape, amplify, and occasionally distort the original utterance." *Id.* at 207. On the contrary, Plaintiff alleges that "[t]he content of the defamatory article was determined completely by RTJ II." Pl.'s Objection at 11. The author testifies in his deposition that the statements contained in the article were made by Schroeder. Blais Dep. at 38.

reasonably anticipate being haled into court there." *Nowak,* 94 F.3d at 716. The ongoing relationship between RTJ II and United, including the specific telephone call in question, made it foreseeable that RTJ II might be haled into court in Maine as a result of some facet of this mutually beneficial and continuing relationship.[9] thus, the Court concludes that Plaintiff has made the requisite showing of purposeful availment based on the necessary elements of voluntariness and foreseeability.

■ The third requirement for the exercise of specific jurisdiction is reasonableness. The Court assesses the reasonableness of subjecting a nonresident defendant to specific personal jurisdiction by weighing the so-called Gestalt factors, which include

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Pleasant Street,* 960 F.2d at 1088 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985)). These five factors aid the Court in determining whether the exercise of personal jurisdiction "comports with notions of 'fair play and substantial justice.' " *Nowak,*

94 F.3d at 717 (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160).

■ RTJ II argues that its burden of appearance is significant. However, because litigation in an out-of-state forum is usually a costly and inconvenient undertaking, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." *Pritzker v. Yari,* 42 F.3d 53, 64 (1st Cir.1994). RTJ II has not offered any compelling special or unusual circumstances that amplify its burden of appearance in Maine.[10] Thus, while the Court acknowledges that a suit in Maine does involve cost and inconvenience for RTJ II, this factor does not weigh heavily against the exercise of jurisdiction in the Court's determination of reasonableness.[11]

The interest of the forum state weighs in favor of exercising jurisdiction. In analyzing this factor, the Court must determine whether or not Maine has an interest in adjudicating this dispute. The determination is not a comparison between the forum state's interests and the interests of other jurisdictions; rather, it is "to determine whether the forum state *has* an interest." *Nowak,* 94 F.3d at 718. Maine has an interest in adjudicating disputes involving newspapers researched, written, and published within its borders by Maine corporations sufficient to justify tipping the balance in favor of exercising personal jurisdiction. Certainly, significant events took place in Maine, thereby giving it an interest in the dispute. *See id.*

9. RTJ II asserts that its purposefulness in responding to *GCN A–P's* telephone inquiry should be assessed in light of the fact that the newspaper is "published in Hong Kong to an exclusively Asia–Pacific audience and market." Reply at 3. However, the record reveals that the article was researched, written and laid out in Maine and, furthermore, indicates that RTJ II was aware of this during its routine communications with the three *GCN A–P* writers.

10. RTJ II does offer the fact that there may be witnesses located in Malaysia and Singapore. Because RTJ II would incur substantially similar costs if the suit were brought in California, where it is surely amenable to suit, the Court does not find this consideration persuasive.

11. RTJ II places great weight on *Ticketmaster,* in which the court held that a California defendant was not subject to personal jurisdiction in Massa-

chusetts in a defamation suit regarding statements made to a journalist during the course of an unsolicited telephone call. 26 F.3d at 212. In making its determination, the court noted that "the circumstances surrounding this case suggest that the inconvenience to the defendant may not be coincidental." *Id.* at 210–11. There is no indication that Plaintiff has chosen Maine as a forum in an attempt to harass RTJ II. Further, the *Ticketmaster* court found the exercise of personal jurisdiction to be unreasonable in light of its determination that the plaintiff "muster[ed] only the most tenuous showings of reasonableness and purposefulness. . . . ." *Id.* at 212. Because the Court does not characterize Plaintiff's showings of relatedness and purposefulness as "tenuous," it declines to find the burden of litigating in Maine to be determinative where the record demonstrates neither special burdens nor harassment. *See Nowak v. Tak How Investments, Ltd.,* 94 F.3d 708, 718 (1st Cir.1996).

Finally, the third and fourth Gestalt factors also weigh in Plaintiff's favor. In analyzing personal jurisdiction, the Court does not engage in "judicial second-guessing" but defers to Plaintiff's choice of forum as the best indicator of his own convenience.[12] *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir.1995). If Plaintiff has to proceed against United in Maine and against RTJ II in a different forum, judicial resources will be wasted. The judicial system's interest is best served by avoiding duplicative and piecemeal litigation. *Pritzker*, 42 F.3d at 64. The Court does not find, nor has RTJ II offered, any indication that the fifth factor, the common interest of sovereigns in the promotion of social policies, cuts in favor of either party. Thus, taken together, the Gestalt factors counsel in favor of exercising specific jurisdiction over RTJ II.

In summary, Plaintiff has met his burden of a prima facie showing of specific jurisdiction by alleging jurisdictional facts which satisfy the requisite factors of relatedness, purposefulness, and reasonableness. Ultimately, the exercise of personal jurisdiction must be fair and reasonable to the defendant. Plaintiff brings this action, which arises out of the specific contacts between Defendants RTJ II and United, in a forum located in the state in which Defendant United has its place of business and where significant events involving Plaintiff's claim took place. The Court concludes that it is neither unfair nor unreasonable for RTJ II to defend itself in this suit in a Maine forum.[13]

## III. VENUE

RTJ II argues that although venue may be proper under 28 U.S.C. § 1391(a), the Court should elect to transfer the case to California pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Venue is proper in this district under 28 U.S.C. § 1391(a)(2), which provides that a civil action based on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." The Court has discretion in determining whether to transfer a case from one proper venue to another pursuant to section 1404(a). *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.*, 925 F.Supp. 36, 38 (D.Me.1996). In exercising its discretion, the Court considers factors such as "the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation."[14] *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987).

Initially, the Court considers the convenience of the three parties to this action. In suggesting California as the proper venue for this suit, RTJ II is certainly advancing its own interests in convenience. However, venue in California would simply shift the burden of litigating in an out-of-state forum from RTJ II to United, thus still leaving one Defendant inconvenienced by the venue.[15] Plaintiff has chosen the Maine forum as the most convenient site for this litigation, and the Court will not disturb this choice in the absence of evidence which pre-

12. Deference is inappropriate when "the plaintiff's supposed convenience 'seems to be a makeweight,' contrived purely for strategic advantage...." *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 151 (1st Cir.1995). However, the record does not reveal such a situation in this suit.

13. RTJ II's Motion to Dismiss includes a charge of insufficient service of process "due to that lack of personal jurisdiction." Motion to Dismiss at 1. The Court's conclusion that personal jurisdiction does exist renders the service issue moot.

14. In its Motion to Dismiss, RTJ II has raised concerns only about the convenience of the parties and witnesses. It has presented no evidence on any of the other factors relevant to the convenience inquiry, nor does RTJ II raise any arguments asserting that the interests of justice would be best served by the transfer of this suit.

15. This scenario assumes that a California court could exercise personal jurisdiction over United. If not, Plaintiff would be forced to proceed against RTJ II in California and against United in Maine, which would clearly be inconvenient for Plaintiff.

dominates in favor of transfer.[16] *See Ashmore*, 925 F.Supp. at 38. Because one of the two Defendants will be inconvenienced regardless of the choice of venue, the Court is not persuaded that RTJ II's own convenience warrants transfer.

To further its argument in favor of transfer, RTJ II asserts that California would be more convenient for any foreign witnesses. However, foreign witnesses will travel a substantial distance whether the case is tried in Maine or in California. The Court will not disturb Plaintiff's choice of forum to shorten the plane trips of potential foreign witnesses by a few extra hours.[17] RTJ II has not satisfied its burden of showing that California is a more convenient forum for parties and witnesses than Maine, nor has it offered any indication that the interests of justice support transfer. Thus, the Court declines to transfer this suit.

## IV. FORUM NON CONVENIENS

A district court may dismiss a case if there is an adequate alternative foreign forum that is fair and substantially more convenient for the parties and the courts. *See Nowak*, 94 F.3d at 719; *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 947 (1st Cir.1991). "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). RTJ II bears the burden of proving "the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency

strongly favor litigating the claim in the alternative forum." *Nowak*, 94 F.3d at 719. The Court concludes that, even assuming that Singapore is available as an adequate alternative forum, RTJ II fails to demonstrate that Singapore is a substantially more convenient forum for this litigation.[18]

The Supreme Court has provided two sets of factors for evaluating convenience in a forum non conveniens analysis. The private interest factors are

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. In addition to the private interest factors, courts must consider the public interest factors, which include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843). "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster*

---

**16.** Although a foreign plaintiff's choice of forum does not receive the same level of deference as that of a domestic plaintiff, the Court does give the choice "some deference." *Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F.Supp. 565, 566 (D.P.R.1996).

**17.** Furthermore, the court notes the availability of video deposition testimony for use at trial in this district. *See* Fed.R.Civ.P. 32(c).

**18.** An alternative forum is generally "available" if the defendant is amenable to process there. *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir.1992) (citations omitted). RTJ II asserts that it has contacts sufficient to ensure its

amenability to process, although it does not go so far as to consent to jurisdiction in Singapore. "An alternative forum may be inadequate ... if 'the remedy [it provides] is so clearly inadequate or unsatisfactory that it is no remedy at all.'" *Id.* at 1350 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981)). The Court finds it unnecessary to make a final determination as to the availability of an adequate alternative forum because even if Singapore does satisfy the requirements, RTJ II has failed to meet its burden of showing that Singapore is a substantially more convenient forum for this litigation.

*v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947).

█ In arguing that the private interest factors favor dismissal, RTJ II focuses on access to sources of proof, the availability of compulsory process, and the cost of producing foreign witnesses. RTJ II argues that the damages witnesses are in Singapore, the golf course witnesses are in Malaysia, and six of Plaintiff's seven potential fact witnesses are in either Singapore or Malaysia.[19] However, the witnesses to the events giving rise to the allegedly defamatory statements and their subsequent publication are in the United States, either in Maine or California. Because most of the witnesses that RTJ II is pointing to appear to be essential to Plaintiff's case, the Court is not concerned about the accessibility of these witnesses.

RTJ II also argues that there is no way to compel the Southeast Asian witnesses to appear at trial, and furthermore, that there is no way to compel deposition testimony under oath of any Malaysian witnesses. There is no indication that the potential Singaporean witnesses will refuse to appear at trial in Maine or that they will not agree to be deposed. Finally, a Singapore forum will be no more conducive to securing sworn deposition testimony from any Malaysian witnesses. This is simply a problem inherent in Plaintiff's action, regardless of the forum in which it is litigated.

The private interest factors raised by RTJ II do not indicate that Singapore is a substantially more convenient forum than Maine in light of the litigation's ties to Maine. Even though Plaintiff is a foreign plaintiff and entitled to somewhat less deference than a domestic plaintiff, *see Piper Aircraft Co.*, 454 U.S. at 256, 102 S.Ct. at 266, RTJ II's claim of convenience is weakened by the fact that it is suggesting an alternative forum half way around the world as more convenient than a domestic forum. There is no evidence in the record showing that it would be more expensive to transport witnesses from Singapore than to actually litigate in Singapore, while Plaintiff asserts that it would be quite costly for him to litigate this matter in Singapore. Tan Aff. ¶ 8.

█ The public interest factors also fail to indicate that this suit should be dismissed for reasons of forum non conveniens. This district does not suffer from heavy docket congestion and, in fact, is likely in the best position to resolve this dispute in the most timely fashion, because discovery has commenced and the expected trial date is April 1998.[20] This forum has a "local" interest in resolving this dispute because critical events giving rise to the claim occurred in Maine. The Court is not persuaded that it should transfer this case on the possibility that foreign law will govern some or all of the legal issues presented.[21] Finally, Maine citizens do have an interest in this dispute, as it involves the transmission of allegedly defamatory statements into the state and the subsequent publication of them by a Maine-based newspaper.

RTJ II does not offer evidence indicating that Singapore would be a substantially more convenient forum for the litigation of this suit. In light of this, the Court will not dismiss this case pursuant to the doctrine of forum non conveniens.

## V. CONCLUSION

Accordingly, it is **ORDERED** that Defendant RTJ II's Motion to Dismiss be, and it is hereby, **DENIED**.

---

**19.** The Court notes that Plaintiff's proposed expert witness on damages, R. Stephen Thing, is located in Maine. Scott Aff. ¶ 8.

**20.** RTJ II presents no evidence to the contrary.

**21.** Federal courts often are called upon to apply foreign law. *See Nowak*, 94 F.3d at 720–21.