**PEARL INVESTMENTS, LLC, Plaintiff**

v.

**STANDARD I/O, INC. and Jesse Chunn, Defendants and Third–Party Plaintiffs**

v.

**Dennis Daudelin and A.B. Watley, Inc., Third–Party Defendants**

No. 02–50–P–H.

United States District Court, D. Maine.

Aug. 14, 2002.

Todd S. Holbrook, Esq., Bernstein, Shur, Sawyer, & Nelson, Portland, for Pearl Investments LLC, plaintiffs.

Robert H. Stier, Pierce, Atwood, Portland, for Standard I/O Inc, Jesse Chunn, defendants.

## ORDER AFFIRMING RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

The United States Magistrate Judge filed with the court on July 11, 2002, with copies to counsel, his Recommended Decision on Motion of A.B. Watley, Inc. to Dismiss. The third-party plaintiff Jesse Chunn filed an objection to the Recommended Decision on July 26, 2002. Neither party has requested oral argument.

I have reviewed and considered the Recommended Decision, together with the entire record; I have made a *de novo* determination of all matters adjudicated by the Recommended Decision; and I concur with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determine that no further proceeding is necessary. Chunn's request for discovery on jurisdiction is **DENIED** because he has made not showing that it would be useful.

It is therefore **ORDERED** that the Recommended Decision of the Magistrate Judge is hereby **ADOPTED**. The motion of A.B. Watley, Inc. to dismiss the claims asserted

against it in the third-party complaint is GRANTED.

SO ORDERED.

## RECOMMENDED DECISION ON MOTION OF A.B. WATLEY, INC. TO DISMISS

COHEN, United States Magistrate Judge.

One of the third-party defendants, A.B. Watley, Inc., moves to dismiss the third-party complaint against it for lack of personal jurisdiction and failure to state a claim on which relief may be granted. I recommend that the court grant the motion.

### I. Applicable Legal Standards

The motion to dismiss invokes Fed. R.Civ.P. 12(b)(2) and (b)(6). Third-Party Defendant A.B. Watley, Inc.'s Motion to Dismiss ("Motion") (Docket No. 7) at 1. A motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F.Supp. 366, 367 (D.Me. 1992) (citation and internal quotation marks omitted). The plaintiff bears the burden of establishing jurisdiction; however, where (as here) the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a *prima facie* showing suffices. *Archibald v. Archibald*, 826 F.Supp. 26, 28 (D.Me.1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992). However, for purposes of considering a Rule 12(b)(2) motion the court will accept properly supported proffers of evidence as true. *Id.*

"When evaluating a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma · Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996); *see also Tobin v. University of Maine Sys.*, 59 F.Supp.2d 87, 89 (D.Me.1999).

### B. Factual Background

For purposes of the Rule 12(b)(6) motion, the third-party complaint includes the following relevant factual allegations. Jesse Chunn is founder, owner and president of Standard I/O, Inc. and a resident of Maine. Counterclaim and Third-party Complaint, included in Answer, Counterclaim and Third-Party Complaint (Docket No. 2), ¶ 2. Dennis Daudelin is the president of the plaintiff, Pearl Investments, LLC, and a resident of Massachusetts. *Id.* ¶ 4. A.B. Watley, Inc. ("Watley") is the successor to On-Site Trading, Inc. ("On-Site") and a New York registered securities broker-dealer specializing in the electronic trading of securities. *Id.* ¶ 5. In February 2001 Chunn opened an account with On-Site in order to conduct on-line trading. *Id.* ¶ 8. Chunn developed his own software to carry out automated on-line trading of securities. *Id.* ¶ 9. He purchased a server and shipped it to On-Site's facility in Great Neck, New York. *Id.* ¶ 10. At the instruction of On-Site, he also purchased a router to provide access to his server over the Internet. *Id.*

Chunn conducted experiments with his software between mid-April and October 26, 2001. *Id.* ¶¶ 11-13. Some time after October 26, 2001 representatives of Watley accessed Chunn's server and wrote over his operating system and software code, destroying several months' work. *Id.* ¶ 14.

After doing so, the representatives of Watley conspired with Daudelin to provide him access to the server, without authorization from or notice to Chunn. *Id.* ¶ 16. Daudelin thereafter took physical custody of Chunn's server and removed it from the On–Site facility. *Id.* ¶ 17. Daudelin and Pearl intimidated Watley into closing Chunn's account, thereby canceling his favorable commission rates and effectively preventing him from developing a commercially feasible automated trading system in the future. *Id.* ¶ 19. Daudelin refused to return Chunn's property to him until after Chunn filed suit for replevin; the hard drive still has not been returned. *Id.* ¶ 21.

For purposes of the Rule 12(b)(2) motion, the following facts, properly supported by proffers of evidence, are relevant. Watley, a registered broker-dealer with the NASD, is a Delaware corporation with offices in New York City, where all of its employees work. Affidavit [of Robert Malin] in Support of Motion to Dismiss ("Malin Aff.") (Docket No. 8) ¶¶ 2–4. Watley is registered in Maine as a broker-dealer but has no employees or agents in Maine, does not solicit business in Maine and does not own or lease real or personal property in Maine. *Id.* ¶ 5. Watley does not have an office in Maine. *Id.* ¶ 6. During the period from 2000 through 2002 Watley had approximately 30 accounts located in Maine; these customers generally place orders electronically to Watley in New York. *Id.* ¶ 8. The trades by these customers generated approximately $108,000 in commissions in 2000; $50,000 in 2001; and $14,000 in 2002 as of May 24, 2002. *Id.* ¶ 8 & jurat. Pursuant to an asset purchase agreement dated November 1, 2001 A.B. Watley Group, Inc. purchased certain assets, and assumed certain liabilities, of On–Site. *Id.* ¶ 13. Watley was not a party to the asset purchase agreement; it is a separate corporate entity of which A.B. Watley Group, Inc. is the parent company. *Id.* ¶ 14. After execution of the asset purchase agreement, On–Site ceased operations and its customers became customers of Watley. *Id.* ¶ 16.

Chunn, a software developer with a principal place of business in Portland, Maine, opened an individual account with On–Site in February 2001 in order to conduct on-line automated trading of securities. Declaration of Jesse Chunn, filed with Opposition by Third–Party Plaintiff Jesse Chunn to Motion by A.B. Watley, Inc. to Dismiss ("Opposition") (Docket No. 9), ¶¶ 1–2. He wrote software to perform automated trading and uploaded it to a server that he purchased and shipped to On–Site, which provided direct access to several electronic trading services. *Id.* ¶ 2. In order to connect to the server he was required to purchase a router which was configured at On–Site and sent to him for installation in Portland. *Id.* ¶ 3. Thereafter, On–Site performed further configuration procedures remotely from New York. *Id.* ¶ 4. On at least one occasion an On–Site representative visited Chunn in Maine to discuss business opportunities. *Id.* ¶ 5.

## III. Discussion

### A. Personal Jurisdiction

When, as here, the parties are residents of different states, the exercise of personal jurisdiction over a non-resident defendant is governed by the forum state's long-arm jurisdiction statute. *American Express Int'l, Inc. v. Mendez–Capellan*, 889 F.2d 1175, 1178 (1st Cir.1989). Maine's long-arm jurisdiction statute applies by its terms "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment." 14 M.R.S.A. § 704–A(1). Therefore, on a motion to dismiss for lack of personal jurisdiction, this court's inquiry focuses on whether the assertion of juris-

diction violates due process. *See, e.g., Archibald v. Archibald*, 826 F.Supp. 26, 29 (D.Me.1993).

A court may have general or specific personal jurisdiction over the defendants in an action. General jurisdiction arises when the defendant has engaged in substantial or systematic and continuous activity, unrelated to the subject matter of the action, in the forum state. *Scott v. Jones*, 984 F.Supp. 37, 43 (D.Me.1997). Specific jurisdiction is based on a relationship between the forum and the particular acts or injuries that provide the basis for the action, that is, "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088–89 (1st Cir.1992). The Maine long-arm statute provides only for the exercise of specific jurisdiction. *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 720 (1st Cir.1991). Chunn presses his claim under both types of jurisdiction. Opposition at 3–7.

■ With respect to a claim of general jurisdiction, the First Circuit has noted that the standard for evaluating the question whether contacts by a defendant with the forum state satisfy the constitutional test for general personal jurisdiction is "considerably more stringent" than the standard applied to claims of specific personal jurisdiction. *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir.1998) (quoting *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir.1984)). In that case, the First Circuit determined that the following were not sufficient minimum contacts to authorize general jurisdiction: (i) a visit by an employee of the defendant to the forum state sixteen years before the conduct that formed the basis of the allegations in the complaint, during which the employee took the photograph of the plaintiff that was allegedly used without his permission sixteen years later; (ii) the defendant's solicitation of business in the forum state during the eighteen months before the complaint was filed by calling, faxing and writing a potential customer in the forum state, sending employees into the forum state on at least two occasions with the intention of developing a relationship with the potential customer and seeking business relationships with two other companies in the forum state; and (iii) taking approximately $585,000 in orders from the customer described above. *Id.* at 87, 92–93. In *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83 (1st Cir.1990), the First Circuit held that the following were not sufficient contacts to authorize general jurisdiction: "licensure and appointment of an agent for service of process; advertising; and litigation activities," *id.* at 89. The defendant never did business in the forum state, advertised in the forum state only for employees for a location outside the forum state, and engaged in litigation only as a defendant in a single previous action. *Id.* Significantly, the First Circuit relied in *Sandstrom* on *Seymour v. Parke, Davis & Co.*, 423 F.2d 584 (1st Cir.1970), in which it held that the Constitution would not permit the exercise of general jurisdiction over a defendant that employed several salesmen who transacted business in the forum state and advertised in the forum state by mail and otherwise, *Sandstrom*, 904 F.2d at 89. And in *Glater*, the First Circuit held that the following were not sufficient contacts to authorize general jurisdiction: (i) the defendant conceded that it did business in the forum state; (ii) the defendant engaged in limited advertising in professional trade journals that circulated in the forum state; and (iii) it employed eight sales representatives whose duties included providing information to individuals and businesses in the forum state who

could purchase its products from independent distributors in the forum state. 744 F.2d at 214–15, 217.

Here, the relevant evidence—all of it supplied by Watley—establishes that Watley is registered as a broker-dealer in Maine; does not have employees or solicit business in Maine; does not advertise in publications directed to Maine; since 2000 has had approximately 30 customers in Maine who place orders electronically to New York, generating income to Watley in 2000 of approximately $108,000, in 2001 of $50,000, and to date in 2002 of $14,000. Malin Aff. ¶¶ 5–8. These commissions represent .002% of Watley's total revenues during this period.[1] *Id.* ¶ 8. These contacts are not sufficient under First Circuit precedent to allow this court to exercise general personal jurisdiction over Watley. Even if Chunn's contacts with On–Site set forth in his affidavit were ascribed to Watley, an issue I need not decide,[2] the general jurisdiction standard would not be met. *See Archibald,* 826 F.Supp. at 29.

■ With respect to specific jurisdiction, the First Circuit has developed the following test:

First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jur-

isdiction must, in light of the Gestalt factors, be reasonable.

*163 Pleasant St.,* 960 F.2d at 1089. The "Gestalt factors" comprise

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Id.* at 1088. Once the plaintiff makes a *prima facie* showing of relatedness and minimum contacts/purposeful availment, the burden shifts to the defendant to convince the court that the Gestalt factors militate against the exercise of jurisdiction. *Coolidge v. Judith Gap Lumber Co.,* 808 F.Supp. 889, 891 (D.Me.1992); *see also Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995) (plaintiff "must carry the devoir of persuasion on the elements of relatedness and minimum contacts") (citations omitted).

In this case, the third-party complaint asserts four claims against Watley sounding in tort. In evaluating relatedness, the first element of the specific-jurisdiction standard, the court examines the question whether the plaintiff has established both "cause in fact (i.e. that the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e. the defendant's in-state conduct gave birth to the cause of action)." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 35 (1st Cir.1998).

---

1. The Malin affidavit actually states that "[t]he total amount of commissions received by Watley Inc. from all those transactions is 002% of the company's total revenues of approximately $80,000,000 during that period." Malin Aff. ¶ 8. Under the circumstances, the omission of a decimal point before the "002"

can only be characterized as a typographical error.

2. In this regard, *see Saco River Tel. & Tel. Co. v. Shooshan & Jackson, Inc.,* 826 F.Supp. 580, 582 (D.Me.1993).

All of the actions of Watley alleged in the third-party complaint to have caused injury to Chunn occurred in New York. Third–Party Complaint ¶¶ 14, 16–18, 29, 32.[3] Thus, even assuming that the injuries would not have occurred but for some contact with the state of Maine by Watley, it cannot be said that any in-state conduct by Watley gave birth to the plaintiff's causes of action. Accordingly, Chunn has not met the first requirement of the specific-jurisdiction standard and it is therefore not necessary to consider the second and third elements.

### B. Failure to State a Claim

If the court adopts my recommendation concerning lack of personal jurisdiction, Watley's argument under Rule 12(b)(6) need not be reached. In the event that the court disagrees with my recommendation on jurisdiction, I recommend that Watley's motion to dismiss pursuant to Rule 12(b)(6) be denied. The motion is based on the erroneous assertion that "the *only* basis alleged in the third-party complaint [ ] for any claim against Watley, Inc., is the bare and unsupported allegation (at ¶ 5) that Watley Inc. is 'the successor to On–Site'." Motion at 13. As discussed above, the third-party plaintiffs clearly allege direct tortious action by Watley, not merely liability by Watley for actions of On–Site. The third-party complaint sufficiently states claims on which relief may be granted for purposes of Rule 12(b)(6).

### IV. Conclusion

For the foregoing reasons, I recommend that the motion of A.B. Watley, Inc. for dismissal of the claims asserted against it in the third-party complaint be **GRANTED.**

3. Contrary to Chunn's suggestion, Opposition at 4, the activities that he claims caused him

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

July 11, 2002.

injury are not alleged to have taken place over the Internet.