**SALISBURY COVE ASSOCIATES, INC., d/b/a Atlantic Brewing Company, Plaintiff,**

v.

**INDCON DESIGN (1995), LTD., Northern Brew Systems, Darryl Gaudreau, Barrie Miller, Brad Miller, Laurence D.T. Johnson, and Milton, Johnson, Defendants.**

No. Civ. 01–211–BC.

United States District Court, D. Maine.

June 27, 2002.

Daniel A. Pileggi, Roy, Beardsley, Williams & Granger, LLC, Ellsworth, ME, for Salisbury Cove Associates Inc, dba Atlantic Brewing Company, plaintiff.

John B. Lucy, Richardson, Whitman, Large & Badger, Bangor, ME, for Laurence DT Johnson, Milton Johnson, defendants.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the Court on May 23, 2002, with copies to counsel, her Recommended Decision on Defendants Johnson and Milton, Johnson's Motion to Dismiss (Docket No. 11); and Plaintiff having filed its objection thereto on June 4, 2002, (Docket No. 12), to which objection Defendants Johnson and Milton, Johnson filed their response on June 17, 2002 (Docket No. 13); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, it is **ORDERED** as follows:

(1) Plaintiff's objection is hereby **DENIED**[1]

---

1. It causes some momentary confusion that Plaintiff, in its Objection to Recommended Decision (Docket No. 12), states that it "does not object to the Magistrate Judge's recommended dismissal of Count VIII, stating a claim for legal malpractice." *Id.* at 3. Plaintiff then proceeds to assert and argue on behalf of an objection to the recommended dismissal of Count VII. *Id.* at 3–7. However, in its conclusion "Atlantic respectfully asserts that the Magistrate Judge incorrectly recommended the dismissal of Counts VII *and VIII* of its complaint." *Id.* at 7. (Emphasis added.)

In the face of the assertion that there is no objection to the recommended dismissal of Count VIII and the lack of any argumentation in support of such an objection, the Court **CONCLUDES** that the latter reference on

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED;**

(3) The Motion to Dismiss Counts VII and VIII against Defendants Johnson and Milton, Johnson for lack of personal jurisdiction and improper venue is hereby **GRANTED.**

## RECOMMENDED DECISION ON DEFENDANTS JOHNSON AND MILTON, JOHNSON'S MOTION TO DISMISS

KRAVCHUK, United States Magistrate Judge.

Plaintiff Salisbury Cove Associates, Inc., d/b/a Atlantic Brewing Company, (hereinafter "Atlantic") brought the present action against defendants after a failed business transaction. Atlantic's complaint states two causes of action against defendants Laurence D.T. Johnson and his firm Milton, Johnson for a breach of fiduciary duty (Count VII) and legal malpractice (Count VIII) rising from Johnson's role as an escrow agent in the business transaction between Atlantic and other defendants. (Docket No. 1.) Before the Court is Johnson and Milton, Johnson's Motion to Dismiss both counts pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) for lack of personal jurisdiction and improper venue. (Docket No. 2.) I recommend that the Court **GRANT** the motion to dismiss Counts VII and VIII against Johnson and Milton, Johnson for lack of personal jurisdiction and improper venue.

### Rule 12(b)(2) and (3) Standards of Review

■ When facing a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001). When an evidentiary hearing is not held to determine whether personal jurisdiction exists, the plaintiff must make a *prima facie* showing of jurisdiction, rather than the preponderance of doubt standard, by "citing to specific evidence in the record that, 'if credited, is enough to support findings of all facts essential to personal jurisdiction.' " *Snell v. Bob Fisher Enter., Inc.,* 115 F.Supp.2d 17, 20 (D.Me.2000) (quoting *Boit v. Gar-Tec Products,* 967 F.2d 671, 675 (1st Cir.1992)). "To defeat a motion to dismiss when the court uses this method the plaintiff must make the showing as to every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.' " *Boit,* 967 F.2d at 675. In so doing, the plaintiff must make affirmative proof beyond the pleadings. *Id.* (citations omitted). When determining whether the plaintiff has made the requisite *prima facie* showing, the court considers the pleadings, affidavits, and exhibits filed by the parties. *Id.* For the purposes of such a review, plaintiff's properly supported proffers of evidence are accepted as true and disputed facts are viewed in a light favorable to the plaintiff, however unsupported allegations in the pleadings need be credited. *Id.*

■ A motion to dismiss based on improper venue under Fed.R.Civ.P. 12(b)(3) triggers a burden on the plaintiff to demonstrate that it has brought the action in a permissible forum. *Cordis Corp. v. Cardiac Pacemakers,* 599 F.2d 1085, 1086 (1st Cir.1979). The procedural analysis applied in determining a challenge of venue follows the procedure for analysis employed in a motion under Rule 12(b)(2). *Global Health Alternatives, Inc. v. Ellon U.S.A., Inc.,* 1999 WL 33117099, *1 (D.Me.1999) (citing *M.K.C. Equip. Co. v. M.A.I.L. Code,*

page seven of Plaintiff's Objection to that recommendation is an error.

*Inc.,* 843 F.Supp. 679, 682–83 (D.Kan. 1994)).

## Background

The following facts are taken from the complaint and plaintiff's filed affidavit.[1] The plaintiff, Atlantic, is a Maine brewing company that brews, bottles, and distributes malt beverage products in Maine. (Compl.¶ 1.) In search of a machine that would bottle its beverages, Atlantic learned that Northern Brew Systems ("NBS") could provide a bottling machine fitting its needs. (Maffucci Aff. ("Aff.") ¶ 3.) NBS is a sole proprietorship located in British Columbia, Canada that sells and distributes industrial equipment for manufacturers and bottlers of malt beverage products. (Compl.¶ 5.) Preliminary discussions ensued between NBS and Atlantic in the fall of 1999 and resulted in NBS's proposal to have a bottling machine built by Indcon Design, Ltd. ("Indcon"), a company in Canada. (*Id.* ¶¶ 2, 13–14; Aff. ¶ 4.) On December 17, 1999, Atlantic, NBS, and Indcon agreed upon the terms of the purchase. (Compl.¶¶ 14–16.)

At some point, defendants Johnson and Milton, Johnson became involved in the transaction. Johnson is an attorney licensed to practice law in British Columbia, Canada and has a principal place of business in British Columbia. (*Id.* ¶ 7.) His law firm, Milton, Johnson, consists of barristers, solicitors, and mediators and also has its principal place of business in British Columbia. (*Id.* ¶ 8.) As a result of Atlantic's apprehension in sending payments to Canada for a machine that had not yet been created, NBS in October of 1999, introduced the idea of having its attorney, Johnson, act as a mediator in the business transaction. (Aff.¶ 6.) When NBS solicited Johnson's services in Canada, Johnson quoted a fee of $600 CDN. (*Id.* ¶ 7.) NBS offered to pay Johnson's fee. (*Id.*) On November 24, 1999, NBS sent Atlantic an "agreement in principle contract" and in an accompanying letter stated that Johnson requested the agreement to make sure the parties agreed upon the terms of the contract before he drew up the paperwork. (*Id.* ¶ 8, Ex. 2.) Atlantic remained apprehensive about sending payments for the machine, thus NBS in December, 1999, outlined a schedule of three payments in a Letter of Agreement with the third payment to be held in trust by Johnson until the machine is proven to operate as specified. (*Id.* ¶¶ 9–10.) During the next few months Atlantic refrained from paying the second installment. (*Id.* ¶ 13.) NBS continued to assert that Johnson should be involved in the transaction. (*Id.*) By the end of March 2000, Atlantic reluctantly accepted NBS's proposal of having Johnson hold the money in escrow. (*Id.* ¶ 14.) NBS then informed Atlantic that Johnson would prepare an escrow/trust agreement. (*Id.* ¶ 16.)

The first direct communication between Johnson and Atlantic was an April 7, 2000, letter sent by facsimile in which Johnson confirmed his undertaking to hold the funds in trust and explained the manner in which payment from the escrow funds would be made. (Compl. ¶ 21; Aff. ¶ 18, Ex. 6.) Johnson sent Atlantic a second facsimile a few days later, on April 13, consisting of a copy of the Agreement

---

**1.** Consideration of the affidavit in the context of determining relevant jurisdictional facts does not require conversion of this motion to dismiss to a motion for summary judgment. *See Boit,* 967 F.2d at 675; *Telford Aviation, Inc. v. Raycom Nat., Inc.,* 122 F.Supp.2d 44, 45 (D.Me.2000) (citing Fed.R.Civ.P. 12(b) (stating that conversion applies when motion is based on failure to state a claim upon which relief can be granted) and *VDI Technologies v. Price,* 781 F.Supp. 85, 87 (D.N.H. 1991)). The majority of the facts alleged by Atlantic are not disputed by Johnson and Milton, Johnson.

stating, in part, that Johnson would hold the third payment in trust until Atlantic confirmed that it was satisfied with the machine. (Aff.¶ 19, Ex. 7.) Atlantic signed the Agreement on April 13, 2000, and sent it back to Johnson. (*Id.*) Due to delays in production, business relations between Indcon, NBS, and Atlantic began to deteriorate during April and May of 2000, resulting in a slight change to the original Agreement. (*Id.* ¶¶ 20, 22.) On June 1, 2000, Johnson sent a letter to Atlantic by facsimile confirming this amendment to the Agreement which called for Johnson to hold both the second and the third payment in trust. (*Id.* ¶ 23, Ex. 11.)

Relying upon Indcon's representation that completion of the machine was imminent, Atlantic tendered the second and third payments due under the Amended Agreement to Milton, Johnson, on June 1, 2000, to be held in escrow. (Compl.¶ 22.) Atlantic obtained the two drafts from a Maine bank as Johnson requested and sent them to Johnson in Canada where he held them in trust. (Aff.¶ 24.) Atlantic enclosed a letter requesting Johnson to send a freight confirmation showing that Indcon had shipped the machine, as the shipping of the machine was the condition for Johnson's release of the second draft. (*Id.*) On June 7, 2000, Johnson responded by facsimile stating that the machine was shipped. (*Id.* ¶ 26, Ex. 14.) Subsequently, Johnson released the second draft to NBS. (*Id.* ¶ 28.) There is no dispute regarding the release of this payment.

After Atlantic received the machine on June 8, 2000, it had nothing but problems with it. (Compl.¶ 25.) Although Indcon was repeatedly informed by Atlantic that there were many defects and deficiencies in the machine, Indcon sent a letter to Milton, Johnson on July 11, 2000, falsely stating that the "start-up" for Atlantic's bottling system "was completed on June 28, 2000." (*Id.* ¶¶ 26–27.) According to the complaint, Indcon intentionally misled Milton, Johnson in order to wrongfully obtain the third draft held in escrow. (*Id.* ¶¶ 62–63.) Based, in part, upon Indcon's misrepresentation in the letter, Johnson and Milton, Johnson released the escrow funds to Indcon. (*Id.* ¶ 28.) At the time, Johnson did not notify Atlantic that he released the third draft. (*Id.*) In a July 18, 2000 writing, Indcon acknowledged that the machine was not operating properly and agreed to have Johnson release the escrow funds to Atlantic. (*Id.* ¶¶ 29, 62.) Indcon made this representation knowing that it had already obtained the escrow funds from Johnson. (*Id.*) When Atlantic subsequently requested the escrow funds from Milton, Johnson, Atlantic was informed that the funds had already been transferred to Indcon pursuant to Indcon's instructions. (*Id.* ¶ 30.)

The complaint alleges that Johnson and Milton, Johnson knew or should have known that Indcon did not have authority to order the release of the escrow funds. (*Id.*) According to the complaint, Johnson and Milton, Johnson owed Atlantic a fiduciary duty and a duty to use reasonable care when handling the escrow funds and breached those duties when they failed to take adequate care in handling and protecting the funds. (*Id.* ¶¶ 67–68, 71–72.) As a result of defendants' breach of duties, Atlantic has suffered damages in excess of $121,570.56 and has suffered, and continues to suffer, lost profit damages of at least $1,500 per month since April 1, 2000. (*Id.* ¶¶ 69, 73.) The claims against Johnson and Milton, Johnson consist of a breach of fiduciary duty claim (Count VII) and a legal malpractice claim (Count VIII). Atlantic states that personal jurisdiction over Johnson and Milton, Johnson exists because they performed legal services as a fiduciary and trustee for a Maine citizen

and caused tortious injury to a Maine citizen. (*Id.* ¶ 11.)

## Discussion

### A. Personal Jurisdiction

■ Johnson and Milton, Johnson argue that this Court lacks personal jurisdiction over them. Personal jurisdiction is " 'an essential element of the jurisdiction of a district ... court,' without which the court is 'powerless to proceed to an adjudication.' " *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (quoting *Employers Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937)). Before a court can exercise personal jurisdiction over a non-resident defendant, a two-part inquiry must be made. First, the court must find that the forum state's long-arm statute authorizes the exercise of jurisdiction.[2] *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir.1994). Second, the court must determine whether the exercise of jurisdiction pursuant to the long-arm statute complies with the Due Process Clause of the United States Constitution. *Id.* Maine's long-arm statute, 14 M.R.S.A. § 704–A, permits jurisdiction over non-resident defendants to the extent allowed by the Fourteenth Amendment's Due Process Clause, therefore the two inquiries merge into one. *Archibald v. Archibald*, 826 F.Supp. 26, 28–29 (D.Me.1993). Consequently, the focus turns to whether the exercise of jurisdiction over the defendants violates due process. *Id.* at 29.

■ Due process requires that the defendant must have sufficient contacts with the forum state so that subjecting the defendant to the forum's jurisdiction does not offend "traditional notions of fair play and substantial justice." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir.1992) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The applicable minimum contacts standard depends on whether the forum is exercising general jurisdiction or specific jurisdiction. *Archibald*, 826 F.Supp. at 29. General jurisdiction can be asserted over a non-resident defendant when the defendant's activities with the forum state are "substantial" or "continuous and systematic." *Id.* When the alleged contacts fail to support the exercise of general jurisdiction, the contacts may nonetheless support the exercise of specific jurisdiction. *Swiss Am. Bank,*

---

2. The Maine long-arm statute, 14 M.R.S.A. § 704–A(2), in part provides:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

A. The transaction of any business within this State;

B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State;

C. The ownership, use or possession of any real estate situated in this State;

D. Contracting to insure any person, property or risk located within this State at the time of contracting;

E. Conception resulting in paternity ...

F. Contracting to supply services or things within this State;

I. Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

*See* 14 M.R.S.A. § 704–A(2).

It is conceivable that the long-arm statute applies to Johnson and Milton, Johnson. Defendants' jurisdictional challenge is not directed at the application of the Maine long-arm statute; it is directed at the constitutionality of asserting personal jurisdiction.

*Ltd.*, 274 F.3d at 623. Specific jurisdiction "may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Pleasant St.*, 960 F.2d at 1088–89.

 Here, the parties agree that specific jurisdiction, not general jurisdiction, is at issue. Whether specific jurisdiction exists "turns on an evaluation of 'the relationship between the defendant, the forum, and the litigation.'" *Archibald*, 826 F.Supp. at 30 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). This relationship is examined by the application of a tripartite test which considers (1) "whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum"; (2) "whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) whether, overall, it is reasonable to exercise jurisdiction in light of five factors that touch upon the fundamental fairness of exercising jurisdiction. *See Swiss Am. Bank, Ltd.*, 274 F.3d at 620–621. All three prongs of the tripartite test must be satisfied for this Court to exercise specific jurisdiction over Johnson and Milton, Johnson.[3] *See Scott v. Jones*, 984 F.Supp. 37, 43 (D.Me.1997).

### 1. Relatedness

The first part of the tripartite test, relatedness, considers whether the claim against the defendant directly arises out of or relates to the defendant's contacts with the forum state. *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995). The relatedness requirement is one of proximate

cause that is applied with a flexible approach. *Scott*, 984 F.Supp. at 44. It works to ensure fundamental fairness "by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue." *Swiss Am. Bank, Ltd.*, 274 F.3d at 623 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). As this exploration is to be conducted on a claim-by-claim basis, Atlantic's two claims against Johnson will be analyzed separately. *See Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir.1999).

#### a. Breach of Fiduciary Duty

 Count VII alleges that Johnson owed a fiduciary duty to Atlantic and breached his duty to use due care when he failed to take adequate care in handling and protecting Atlantic's funds held in escrow. (Compl.¶¶ 68–69.) Atlantic's claim arises out of the escrow agreement and therefore sounds in contract. When a claim is based on a contract, the relatedness test focuses on the elements of the claim and whether the defendant's forum-based activities were "instrumental either in the formation of the contract or its breach." *Phillips Exeter Acad.*, 196 F.3d at 289 (citations omitted).

Atlantic has the burden of making a *prima facie* showing of relatedness. *See id.* at 291. Thus, Atlantic asserts that jurisdiction is appropriate based on Johnson's contacts with Maine which consist of his association with Atlantic, a Maine business, over the course of nine months; the facsimiles Johnson sent to Atlantic in

---

**3.** Although the jurisdictional analysis is to be applied to defendants on an individual basis, the record does not alleged that Milton, Johnson has contacts with Maine that go beyond those Johnson has with Maine. Thus, the analysis here focuses on Johnson. Where there is no jurisdiction over Johnson, there is, a fortiori, no jurisdiction over Milton, Johnson.

Maine; and the injury Johnson caused to Maine-based Atlantic. (Pl.'s Opp'n. to Mot. to Dismiss at 14–16; Compl. ¶ 11.) The existence of a contract or a relationship between Johnson and Atlantic does not by itself satisfy the relatedness requirement. *See Swiss Am. Bank, Ltd.,* 274 F.3d at 621 (stating that a defendant's business relationship and/or a contract with plaintiff without more does not amount to a contact with the forum). Although the "effects" suffered in the forum state may constitute a contact in some contexts, they generally do not constitute a significant contact when the injury was caused by out-of-state acts or omissions. *Mass. Sch. of Law at Andover v. Am. Bar Ass'n,* 142 F.3d 26, 36 (1st Cir.1998) (discussing cases). As the injury here was caused by Johnson's release of funds to Indcon which occurred entirely in Canada (Compl.¶¶ 28, 30), the in-state effect is not a sufficient contact for the exercise of jurisdiction. The remaining contacts for consideration consist of the facsimiles Johnson sent to Atlantic in Maine.

There is no doubt that letters and telephone calls from a defendant into a forum state constitute "contacts." *See Sawtelle,* 70 F.3d at 1390 (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Of the five facsimiles Atlantic received from Johnson, only three relate to the breach of fiduciary claim: the April 7, 2000 letter confirming that Johnson would hold the funds in escrow; the April 13, 2000 copy of the Agreement; and the June 1, 2000 letter amending the Agreement to reflect that Johnson would hold the second bank draft as well as the third draft in escrow. (*See* Aff. Ex. 6, 7, 11.) These three communications appear to be instrumental in the formation of the contract/escrow agreement. Of the two remaining letters Johnson faxed to Atlantic, one is a June 7, 2000 letter confirming that the machine was

shipped. (Aff.Ex.14.) Atlantic argues that this facsimile constitutes a relevant contact, however, this letter relates to Johnson's release of the second draft, which is not contested and is not at issue here. Thus, Atlantic's claim does not arise out of or relate to the June 7, 2000 letter. The second facsimile was sent on July 20, 2000, after Johnson released the third draft and is merely a photocopy of the Indcon letter that prompted Johnson's release of the third draft. (Aff.¶ 36, Ex. 15.) Atlantic does not assert that this facsimile constitutes a relevant contact with Maine. (Pl.'s Opp'n to Mot. to Dismiss at 13–14).

■ Atlantic correctly asserts that Johnson's contacts with Maine must "form an important or material, element of proof in [its] case, that is the creation of a duty owed to Atlantic." (Pl.'s Opp'n to Mot. to Dismiss at 14.) *See also Pleasant St.,* 960 F.2d at 1089; *Macri v. Macri,* No. 01–464, 2002 WL 826823, *5 (D.N.H., May 1, 2002). Johnson's three facsimiles meet this requirement as they show Johnson agreed to hold the funds in escrow. Based on the foregoing, Johnson's three facsimiles constitute contacts with Maine that "relate to" Atlantic's claim. Thus, Atlantic has made a colorable showing that its breach of fiduciary claim arises out of or relates to Johnson's contacts with Maine.

### b. Legal Malpractice—Negligence

■ Count VIII alleges that Johnson owed a duty to Atlantic to use reasonable care in handling the escrow funds on behalf of Atlantic and Indcon. (Compl.¶ 71.) Johnson allegedly breached that duty when he failed to take adequate care in handling and protecting Atlantic's funds held in escrow thereby injuring Atlantic. (*Id.* ¶¶ 71–73.) The relatedness test in a tort claim such as this focuses on proximate cause; more specifically whether the

plaintiff has established "cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." *Mass. Sch. of Law,* 142 F.3d at 35 (citing *Pleasant St.,* 960 F.2d at 1089; *Ticketmaster–NY, Inc. v. Alioto,* 26 F.3d 201, 207 (1st Cir.1994)). I find that only three of Johnson's five communications can be said to be relevant to Atlantic's legal malpractice claim: the April 7, 2000 letter confirming Johnson's undertaking to act as an escrow agent, the April 13, 2000 copy of the Agreement, and the June 1, 2000 letter amending the Agreement. (Aff.Ex.6, 7, 11.) The remaining facsimiles are not relevant contacts to this claim for the same reasons explained above in the breach of fiduciary duty analysis.

In order for the three facsimiles to be the basis for exercising jurisdiction, they must have more than a cursory relation to the malpractice claim; there must be a causal nexus with the malpractice claim. *See Mass. Sch. of Law,* 142 F.3d at 35–36. In *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995), the First Circuit Court of Appeals determined that jurisdiction could not be exercised over two non-forum law firms and defendant attorneys in a legal malpractice cause of action stemming from poor settlement advice provided to a client. The court found only two contacts relevant to the plaintiffs' claim: a letter from one defendant law firm advising the plaintiff to accept what ultimately was an incredibly low settlement offer and a telephone call from the other defendant firm which concurred in the settlement recommendation. *Sawtelle,* 70 F.3d at 1389. Finding that these communications were not the negligent conduct that caused plaintiffs' injury (i.e. losing the right to adequate recovery on their claim due to their acceptance of the settlement offer), the court held that the communications did not constitute in-forum acts sufficient to establish specific personal jurisdiction. *Id.* at 1390. In reaching this determination, the court stated that the injury was caused by the defendants' aggregate out-of-state negligent acts and omissions, including the defendants' decisions and investigations that informed their judgment about the settlement. *Id.* The negligence occurring outside the forum was the effective cause of the injury, not the letter and telephone call defendants transmitted into the forum. *Id.*

In the present matter, as in *Sawtelle,* the negligence forming the malpractice claim occurred entirely outside the forum state. Johnson, NBS, and Indcon are all located in Canada; Johnson held the funds in trust in Canada; and Johnson's release of the funds to Indcon occurred in Canada. (Compl.¶¶ 2, 5, 7, 8, 16, 22, 28.) Further, the decisions and acts surrounding Johnson's release of Atlantic's funds and that form the basis of Atlantic's claim occurred outside the forum state. Atlantic does not allege that Johnson's facsimiles contained misrepresentations. The alleged injury and negligence forming the basis of Atlantic's malpractice claim involves Johnson's act of releasing the funds, not the substance of his three facsimiles. Thus, the malpractice claim does not arise out of the three facsimiles, which consequently are ancillary to the alleged negligent conduct that occurred entirely in Canada. Accordingly, Atlantic has not made a *prima facie* showing of relatedness for the malpractice claim.

### 2. Purposefulness

■ The purposeful availment test examines whether the defendant's contacts with the forum state "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of

that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Pleasant St.,* 960 F.2d at 1089. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third party." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). Unlike the relatedness test, which focuses on the specific conduct that gives rise to the claim, the purposefulness test allows for consideration of the defendant's more general connections with the forum state. Under the purposeful availment test, even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum. *Id.* at 475 n. 18, 105 S.Ct. 2174. Two cornerstone elements of purposefulness guide the determination of purposeful availment: voluntariness and foreseeability. *Scott,* 984 F.Supp. at 44. The voluntariness element ensures that the defendant's contacts are not based on "the unilateral actions of another party or a third person." *Id.* The foreseeability element "guarantees that 'the defendant's contacts with the forum state [are] such that he should reasonably anticipate being haled into court there.'" *Id.* at 44–45 (citing *Nowak v. Tak How Inv., Ltd.,* 94 F.3d 708, 716 (1st Cir.1996)).

As to voluntariness, Atlantic claims that defendant's four facsimiles sent during April 7, 2000 to June 7, 2000, are "not isolated, random, or unsolicited communications," rather they are an exchange of information that played an instrumental role in the transaction for which Johnson's paid services as an escrow agent was acquired. (Pl.'s O'ppn. Mot. to Dismiss at 15.) The record shows that Johnson agreed to act as an escrow agent and was aware that Atlantic is located in Maine.

Thus, Johnson's contacts with Maine in the form of the escrow relationship and the facsimile communications are voluntary.

The second element of the purposeful availment prong, forseeablilty, explores whether the defendant benefited from the forum-based contacts in a way that made jurisdiction foreseeable. *See Phillips Exeter Acad.,* 196 F.3d at 292 (citing *Ticketmaster–N.Y.,* 26 F.3d at 207). According to the record, the escrow relationship with Atlantic and the communications sent by facsimile are the only contacts Johnson had with the state of Maine. The existence of a contract between the parties, without more, does not show that the defendant purposefully established minimum contacts with the forum. *See Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174; *Phillips Exeter Acad.,* 196 F.3d at 292 (stating that the mere fact that a non-forum firm or attorney agreed to act as a trustee of a trust is not sufficient to establish purposeful availment). Thus, to meet its burden of making a *prima facie* showing of purposeful availment, Atlantic must show more than the fact that Johnson acted as an escrow agent for a Maine business.

Johnson has only a few contacts with Maine as the majority of events occurred in Canada. According to the record, Johnson became involved in the business transaction as a result of NBS's solicitation of his services, not as a result of defendant soliciting for business in Maine. (Aff.¶¶ 6, 7, 9, 12, 13, 16.) Johnson and NBS negotiated the terms of Johnson's service in Canada and Johnson's fee was apparently paid by NBS in Canada. (*Id.* ¶¶ 6–8, 10.) Further, Johnson's service was to be performed entirely in Canada and that is where Johnson held and released funds. (*Id.* ¶¶ 12, 23–24, 32.) The record does not allege that Johnson committed any in-state

acts, and aside from Johnson's agreement to hold funds in escrow for a business located in Maine, the only forum-based contacts consist of the facsimiles sent over the course of three months. As one claim against Johnson is based on a contractual relationship, consideration must also be given to the parties' "prior negotiations and contemplated future consequences," the terms of the contract, and the parties' "actual course of dealing," when determining whether the defendant purposefully established minimum contacts.[4] *See Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51–52 (1st Cir.2002) (quoting *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174). Prior negotiations regarding Johnson's service occurred outside the forum between Johnson and his client NBS. Johnson's first direct contact with Maine and Atlantic is Johnson's April 7, 2000 letter confirming that Johnson would act as an escrow agent in the transaction between Atlantic, NBS, and Indcon. (Aff.¶¶ 6–8, 10, 18.) Atlantic does not allege that it or Johnson contemplated future consequences beyond the completion of the escrow agreement. There is nothing in the record, nor in the Agreement, suggesting that either Atlantic or Johnson anticipated ongoing relations after the business transaction was complete. Thus, Johnson does not have any additional connections with Maine as a result of his contract with Atlantic.

Seeking to show a substantial connection that would justify jurisdiction, Atlantic argues that Johnson had a "long history of involvement" with Atlantic due to his participation in NBS and Indcon's business transaction with Atlantic over the course of nine months. (Pls.' Opp'n Mot. to Dis-

miss at 15–16.) Atlantic asserts that Johnson's involvement began as early as October 1999, when Johnson quoted NBS a $600 CDN fee to act as mediator and continued until the June, 2000 breach. (*Id.* at 15.) However, there is nothing in the record indicating that Johnson engaged in activities directed at Maine during the months of October, 1999, though March, 2000. Johnson's involvement during these months consists of Johnson communicating in Canada with NBS, one of Johnson's clients. (Aff.¶¶ 6–8, 10.) Under the facts alleged in the record, NBS's repeated requests directed at Atlantic to use Johnson as an escrow agent (*Id.* ¶¶ 6, 7, 9–10, 12–14) cannot be considered to be Johnson's contacts with Maine.

▆ The existence of an attorney-client relationship with a non-forum attorney solicited by the forum-based client coupled with written and telephonic communications to the client in the forum state is insufficient to establish voluntary purposeful availment. *See Sawtelle,* 70 F.3d at 1391–1393. Further, where a defendant attorney, solicited by a forum-based client, represents the client in a non-forum state and, in connection with that attorney-client relationship, accepts payment from a forum-based bank, makes telephone calls, and sends letters to the client, purposeful availment does not exist because there is no "deliberate creation of a 'substantial connection' with the forum." *See Sher,* 911 F.2d at 1362–63, 1366. Similarly, Johnson's contacts do not amount to a substantial connection with Maine so as to find that he should have anticipated being subjected to personal jurisdiction in a Maine court. *See Burger King,* 471 U.S. at 476 n. 18, 105 S.Ct. 2174 (stating that some single or occasional forum-based acts

---

4. Purposeful availment is commonly called "minimum contacts." *Mass.Sch. of Law,* 142 F.3d at 35–36.

may not be sufficient to establish jurisdiction if the nature, quality, circumstances of the act's commission create only an "attenuated" affiliation with the forum). Johnson's four facsimiles sent during April and June of 2000, cannot be considered a "substantial connection" with Maine for the purposes of asserting jurisdiction. *Cf. Sawtelle,* 70 F.3d at 1391–1393; *See also Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 224–225 (8th Cir.1987) (finding that the defendant law firm's numerous phone calls and mailings to the forum-based client and a three-day visit to the forum state were insufficient contacts for the assertion of personal jurisdiction). There is nothing in the record suggesting that Johnson purposefully availed himself of the benefits and protections of Maine law. Further, the record does not lead to the conclusion that Johnson's forum-based contacts made it foreseeable that Johnson would be subject to personal jurisdiction in Maine. Based on the record, viewed in the light favorable to plaintiff, I find that Atlantic has not made a *prima facie* showing of purposeful availment on either the contract or the tort claim.

### 3. Reasonableness

The reasonableness prong focuses on whether the assertion of personal jurisdiction "comports with notions of 'fair play and substantial justice.'" *Scott,* 984 F.Supp. at 45 (citing *Nowak,* 94 F.3d at 717). In this portion of the tripartite analysis, the burden is on the defendant to establish that five factors, commonly referred to as the Gestalt factors, have been met. *Pleasant St.,* 960 F.2d at 1088 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). The five factors are: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining

the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.*

The reasonableness test works like a sliding scale, thus "[t]he weaker the plaintiff's showing on the first two prongs (relatedness and purposefulness), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* Where the plaintiff has not made a *prima facie* showing of relatedness and purposefulness, there is no need to enter into the reasonableness analysis. *Sawtelle,* 70 F.3d at 1394. Although Atlantic partially satisfies its *prima facie* burden in the first prong by showing relatedness between Johnson's contact and the breach of fiduciary claim, Atlantic fails to show relatedness with the legal malpractice claim. More importantly, Atlantic does not make a *prima facie* showing of purposeful availment. Therefore, analyzing the reasonableness of exerting personal jurisdiction in this case is futile.

In conclusion, Atlantic has not met its burden of making a *prima facie* showing that this Court has jurisdiction over Johnson. As the record does not allege that Milton, Johnson has contacts with Maine beyond Johnson's contacts, personal jurisdiction does not exist over Milton, Johnson either.

### B. Venue

Where jurisdiction in a civil action is based only on diversity of citizenship, venue is governed by 28 U.S.C. § 1391(a), which states that the action can only be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property

that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *See* 28 U.S.C. § 1391. The first and second option are not applicable here.

 When venue is challenged on a motion to dismiss, the plaintiff has the burden to present sufficient facts showing venue is appropriate. *Cordis Corp.*, 599 F.2d at 1086. The complaint claims that venue is appropriate because Atlantic regularly does business in Maine. (Compl.¶ 12.) In response to defendants' challenge, Atlantic merely asserts that it has meet subsection (3) by showing that the Court has personal jurisdiction over defendants. (Pl.'s Opp'n to Mot. to Dismiss at 17–18.) As the discussion above illustrates, Atlantic has not made a *prima facie* showing that Johnson and Milton, Johnson are subject to specific personal jurisdiction in Maine. I therefore find that Atlantic has also not met its burden of demonstrating the appropriateness of venue. Accordingly, the action against Johnson and Milton, Johnson should be dismissed.

### Conclusion

I recommend that the Court **GRANT** the motion to dismiss Counts VII and VIII against Johnson and Milton, Johnson for lack of personal jurisdiction and improper venue.

### *NOTICE*

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.