**LUCERNE FARMS, Plaintiff**

v.

**BALING TECHNOLOGIES, INC., Defendant**

No. 02–CV–49–B–S.

United States District Court, D. Maine.

Oct. 23, 2002.

Peter J. Brann, Kevin J. Beal, Esq., Daniel Nuzzi, Esq., Brann & Isaacson, Lewiston, ME, for Lucerne Farms, plaintiff.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, Peter K. Skivington, Esq., Jones and Skivington, Geneseo, NY, for Baling Technologies Inc, defendant.

## ORDER

SINGAL, District Judge.

A producer of animal feed seeks contract and tort damages from the seller of a reconditioned baling machine that the buyer claims was defective. Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction. (Docket # 16). For the following reasons, the Court DENIES Defendant's motion.

## I. LEGAL STANDARD

When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction over the defendant. Fed.R.Civ.P. 12(b)(2); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). In the present case, the prima facie standard is appropriate and no evidentiary hearing is necessary because the parties do not dispute the facts relevant to personal jurisdiction. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir.1996). Under this standard, if Plaintiff cites to specific evidence in the record, the Court must accept the proffered facts as true and view them in the light most favorable to Plaintiff. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir.2002). The Court must also accept as true any uncontested facts put forward by Defendant. *Id.*

The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. *Nowak*, 94 F.3d at 712. Thus, to establish personal jurisdiction over Defendant, Plaintiff must demonstrate both that Maine's long-arm statute grants jurisdiction and that exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. *Daynard*, 290 F.3d at 52. Because the Law Court has deemed Maine's long-arm statute coextensive with the permissible exercise of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment, the due process inquiry controls in the present case. *See* 14 M.R.S.A. § 704–A (Supp.2001); *Murphy v. Keenan*, 667 A.2d 591, 593 (Me.1995); *see also Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F.Supp.2d 44, 45 (D.Me.2000).

## II. FACTS

Plaintiff Lucerne Farms is a Maine corporation located in Fort Fairfield, Maine and engaged in the business of producing horse feed. Defendant Baling Technologies, Inc. ("BTI") is a New York corporation located in North Chili, New York that sells used baling machines. After seeing a used baler advertised for sale on the internet, Lucerne Farms provided its contact information to BTI. BTI then commenced negotiations with Lucerne Farms for the sale of a reconditioned baler, ultimately resulting in the purchase of the machine. In the period between January 23, 2001, and March 15, 2001, when Lucerne Farms received the baler, BTI and Lucerne Farms communicated by telephone approximately fifty times. These communications included one facsimile from BTI, dated January 23, 2001, describing the condition of the baler and proposing the terms of sale and twenty-four telephone conversations initiated by BTI. BTI initiated four of the telephone conversations, totaling over an hour in length, prior to the January 31, 2001, sale of the baler. The entire course of communications addressed the condition, functionality and performance specifications of the baler.

Darren Hanson ("Hanson"), a Lucerne Farms employee, traveled to BTI's place of business in New York to inspect the baler prior to the sale. Although the baler was not operational during his visit, BTI represented that it had hired a contractor, DAC Contractors, to recondition the machine. George James, President of Lucerne Farms, authorized him to purchase the baler and Hanson executed a purchase and sale agreement on January 31, 2001, F.O.B. Honeoye, New York.[1] Hanson presented a check to BTI for $4900, representing a ten percent deposit on the contract price of $49,000. As part of the sales contract, BTI further agreed to provide two days of onsite start-up assistance at Lucerne Farms. The agreement also contained a thirty-day parts warranty.

The baler arrived at Lucerne Farms on March 15, 2001. Pursuant to the contract,

---

**1.** Plaintiff's statement of facts indicates that Hanson traveled to New York in March of 2001. (Plt.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 2 (Docket # 18).) However, both parties include a copy of the agreement signed and dated by Hanson on January 31, 2001. (*See* Plt.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at Ex. 3 (Docket # 18); Aff. of James R. Chalmers III at Ex. B (Docket # 17).) The Court, therefore, treats the contract as having been executed on January 31, 2001.

Additionally, to the extent relevant to the determination of personal jurisdiction, the Court considers the terms "Net Price F.O.B. Honeoye, New York" to indicate that title passed to Plaintiff in New York and that Plaintiff bore the risk of loss while the baler was shipped from New York to Maine. *See* 11 M.R.S.A. § 2–401(2)(a) (1995); 11 M.R.S.A. § 2–509(1) (1995); (Plt.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at Ex. 3 (Docket # 18).); *see also A.F. Briggs Co. v. Starrett Corp.*, 329 A.2d 177, 184 (Me.1974).

BTI personnel arrived in Maine to assist Lucerne Farms with the set up and installation of the machine. However, the baler proved defective from the outset. Rather than training Lucerne Farms employees in the use of the machine, the BTI personnel attempted a number of repairs. In the period following delivery, BTI and Lucerne Farms shared over 100 telephone communications, including 35 calls initiated by BTI and 7 calls initiated by DAC Contractors, in a continuing effort to repair the baler. The malfunction of the baler necessitated a number of replacement parts, supplied by BTI pursuant to the thirty-day parts warranty, as well as maintenance efforts by DAC Contractors. Lucerne Farms further alleges that BTI made an oral promise to reimburse it for these maintenance expenses. The repair efforts were ultimately unsuccessful, resulting in Lucerne Farm's purchase of another baler.

On March 18, 2002, Lucerne Farms filed a nine count complaint against BTI in this Court. Count I asserts a claim for breach of contract. Counts II, III and IV allege breaches of various express and implied warranties. In Count V, Lucerne Farms seeks recovery for BTI's alleged breach of duty of good faith and fair dealing. Count VI seeks restitution for BTI's alleged unjust enrichment. Counts VII and VIII seek recovery for negligent misrepresentation and fraud. Count IX seeks recovery of punitive damages for BTI's alleged negligent misrepresentation and fraud. On August 15, 2002, BTI moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## III. DISCUSSION

■ Due process requires that the Court make three inquiries when a defendant challenges the exercise of specific personal jurisdiction.[2] *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,* 196 F.3d 284, 288 (1st Cir.1999). First, the Court must ask whether the claim underlying the litigation directly relates to or arises out of Defendant's contact with the forum. *Id.* Second, the Court must examine whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. *Id.* Third, the Court must weigh a number of factors touching upon fundamental fairness to determine whether jurisdiction is reasonable. *Id.* To exercise specific jurisdiction over Defendant's person, the Court must make an affirmative finding on each inquiry. *Id.*

### A. Relatedness

Under the relatedness inquiry, Plaintiff must demonstrate a nexus between Defendant's contacts with the forum state and its own causes of action. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 621 (1st Cir.2001). Rather than examine the relationship between the parties, the Court looks to the content of the interaction between parties for constitutionally significant contacts. *Phillips Exeter,* 196 F.3d at 290. As specific jurisdiction is tied to the particular claim asserted, a nonresident defendant's contacts are evaluated separately for contract and tort claims. *Id.* at 289. However, in the present case Plaintiff's fraud and negligent misrepresentation claims, although sounding in tort, require an examination of the representa-

---

**2.** Plaintiff concedes that Defendant is not subject to general personal jurisdiction. The higher standard of general jurisdiction requires that a nonresident defendant engage in continuous and systematic contacts with the forum state. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 619 (1st Cir.2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

tions made in the sales contract similar to the analysis required for the contract and warranty claims. *Cf. id.* at 290–91 (disregarding a disputed characterization of a claim because under the facts of the case "the same two landmarks predominate" in either characterization). Given the underlying similarity of the contract and tort actions, the court analyzes all of Plaintiff's claims under the contracts rubric. *See Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1, 10–11 (1st Cir.2002) (noting that, although the analysis of tort claims ordinarily differs from contract claims, the two inquiries merge for the tort of intentional interference with a contractual or business relationship); *Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 64–65 (1st Cir.2002) (addressing the "gist" of plaintiff's claim sufficient for purpose of relatedness inquiry regardless of how a claim is characterized).

■ In a contracts case, a defendant's contacts with the forum must be sufficiently linked to the formation, performance or breach of the contract at issue. *Phillips Exeter*, 196 F.3d at 289; *Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F.Supp.2d 44, 46 (D.Me.2000). The existence of a contract alone is insufficient to establish minimum contacts with a distant forum. *Swiss Am. Bank*, 274 F.3d at 621 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Rather, the Court must examine prior negotiations and contemplated future consequences of the contract in addition to the parties' actual course of dealing. Id. When physical presence is lacking courts look to some other indication that a nonresident defendant has reached into the forum, such as mail or telephone contacts. *Id.* at 622; *Mass. Sch. of Law v. ABA*, 142 F.3d 26, 36 (1st Cir.1998).

■ Although the baler sales contract was executed in New York, the negotia-tions preceding Hanson's trip to BTI resulted in significant contacts between Defendant and the State of Maine. Defendant sent a detailed facsimile to Maine on January 23, 2001, in response to Plaintiff's online inquiry regarding the reconditioned baler. The facsimile represented a comprehensive quote for the machine, listing the baler's performance specifications as well as the installation options available to Plaintiff. Moreover, it is undisputed that Defendant made four phone calls to Lucerne Farms during the period between Plaintiff's receipt of the fax and Hanson's trip. These conversations with the forum state, totaling over an hour, appear to have shaped the formation of the sales contract ultimately executed in New York.

Defendant's performance under the contract is similarly linked to the events constituting Plaintiff's claim. The contract included both a thirty-day parts warranty and an agreement to provide onsite installation assistance upon the baler's arrival in Maine. Defendant made an effort to comply with these obligations by shipping machine parts to Maine and by providing installation assistance to Plaintiff. Moreover, a significant shipment of goods into Maine F.O.B. is sufficient to establish minimum contacts with the forum, provided Plaintiff's claim arises from the shipment. *See Cambridge Literary Props.*, 295 F.3d at 64; *see also Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 30 (1st Cir.1988) (dismissing the argument that title to the goods at issue had passed outside the forum state as insignificant to the jurisdiction analysis). The inclusion of the warranty and start-up provisions as well as Defendant's shipment of the reconditioned baler to Plaintiff all indicate that Defendant contemplated a continuing relationship with Plaintiff and the forum when contracting. *See Daynard*, 290 F.3d at 61.

The alleged breach arose out of Defendant's ongoing relationship with the forum. Plaintiff maintains that Defendant represented it would provide an operational baler and failed to do so in breach of the sales agreement. The January 23 facsimile and the pre-execution telephone conversations are therefore integral to a determination of Plaintiff's rights under the contract. *See Salisbury Cove Assocs., Inc. v. Indcon Design (1995), Ltd.*, 211 F.Supp.2d 184, 192 (D.Me.2002) (finding telephonic contacts sufficiently related to a contracts claim where three facsimiles represented a material element of proof). Plaintiff further alleges that Defendant breached by failing to provide start-up assistance and reimburse Plaintiff for parts and subsequent servicing. Both of these alleged events occurred within the forum state. Based on these jurisdictional facts, Plaintiff has met its burden of making a prima facie showing of relatedness.[3]

### B. Purposeful Availment

The Court next inquires whether Defendant's contacts with Maine constitute purposeful availment of the forum such that Defendant invoked the protection of Maine law and could reasonably foresee being haled into court in Maine. *Phillips Exeter*, 196 F.3d at 292. The inquiry focuses on Defendant's intentionality and has two components. *Swiss Am. Bank*, 274 F.3d at 623. Defendant's contacts must be voluntary and Defendant must have benefited from the contacts such that the exercise of

personal jurisdiction would be foreseeable. *Phillips Exeter*, 196 F.3d at 292.

█ Defendant's contacts with the forum were intentional. The January 23 estimate, although in response to Plaintiff's inquiry, represented a solicitation of Plaintiff's business. The subsequent course of events bears out this interpretation. Only after four additional telephone calls to Maine and a visit to New York by a Lucerne Farms employee, was the sale finally authorized by Plaintiff. Promotional correspondence intended to solicit business represents voluntary availment of a forum, regardless of whether Plaintiff initiated the contact. *Nowak*, 94 F.3d at 717. Moreover, Defendant agreed to a continuing relationship with Plaintiff by including the thirty-day parts warranty and installation provisions. Presumably, inclusion of these provisions and the additional contacts with Maine they foreshadowed was necessary before Defendant could enjoy the benefit of the contract price. Defendant's continuing relationship with the forum indicates that litigation in Maine was foreseeable. *See Salisbury Cove*, 211 F.Supp.2d at 195. Given these voluntary decisions to avail itself of the forum, Defendant should have reasonably anticipated litigation in Maine.

### C. Reasonableness

██ In light of traditional notions of "fair play and substantial justice," the

---

**3.** Defendant maintains that the Court should consider only those jurisdictional facts predating the formation of the contract. As discussed above, Defendant's pre-execution contacts are sufficiently related to Plaintiff's cause of action. However, Plaintiff further alleges a breach of Defendant's continuing obligation to provide start-up assistance and disputes Defendant's performance under the thirty-day parts warranty. Thus, Plaintiff's cause of action also arises, at least in part, after the execution of the sales agreement and

within the forum state. *See Cambridge Literary Props.*, 295 F.3d at 66 ("for purposes of specific jurisdiction, contacts should be judged when the cause of action arose").

Additionally, the Court notes that although internet advertising may constitute a forum contact under some circumstances, Plaintiff appears to concede that Defendant's advertising did not rise to the level of such a contact. *See, e.g., Back Bay Farm, LLC v. Collucio*, 230 F.Supp.2d 176, ——, 2002 WL 31159421, at *7 (D.Mass.2002).

Court next considers whether the exercise of personal jurisdiction over Defendant is unreasonable despite Defendant's relevant minimum contacts with Maine. *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Cambridge Literary Props.*, 295 F.3d at 66. The Court weighs a number of "gestalt" factors in making the reasonableness determination, including: (1) Defendant's burden in appearing; (2) the forum state's interests in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; and, (4) the judicial system's interests in obtaining the most effective resolution of the controversy. *Nowak*, 94 F.3d at 717. Under Maine's long arm statute, the burden of showing that personal jurisdiction is unreasonable shifts to Defendant once minimum contacts and purposeful availment have been established. *See Murphy v. Keenan*, 667 A.2d 591, 594 (Me.1995); *see also Snell v. Bob Fisher Enters.*, 115 F.Supp.2d 17, 20 (D.Me.2000). Where relevant minimum contacts exist, the gestalt factors rarely preclude jurisdiction. *Cambridge Literary Props.*, 295 F.3d at 66.

■ Under the instant facts, Plaintiff has a significant interest in litigating within its home forum. Maine's interest in affording its consumers a convenient forum to redress injuries inflicted by out-of-forum actors is equally compelling. *See Nowak*, 94 F.3d at 718. The costs imposed upon Defendant by appearing in Maine are only meaningful if Defendant can demonstrate some special or unusual burden. *Scott v. Robert Trent Jones II*, 984 F.Supp. 37, 45 (D.Me.1997). Although New York would represent a more convenient forum for Defendant, the burden is not special or unusual given Defendant's demonstrated willingness to travel to Maine to provide start-up and installation assistance. Moreover, because the Court has already addressed a number of issues in the litigation, *Lucerne Farms v. Baling*

*Techs. Inc.*, 208 F.R.D. 463 (D.Me.2002), the concerns of judicial economy also weigh in favor of exercising personal jurisdiction. *See Daynard*, 290 F.3d at 62. Thus, the Court concludes that exercise of personal jurisdiction over Defendant is reasonable in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion.

SO ORDERED.